OPINION OF TfiE COURT
Dan Lamont, J.
This petition on behalf of a handicapped preschool child seeks a Family Court order requiring the County of Schoharie to pay for special educational services. The petition dated July 30, 1982, and filed on August 20, 1982, seeks payment for tuition and transportation expenses incurred between April 1, 1982 and June 25, 1982.
The County Attorney concedes that Joshua B. (born May 9, 1981) is a handicapped child and that the special educational services were reasonable, necessary and appropriate; however, citing regulations of the State Department of Education which preclude State reimbursement to the county “unless appropriate notification has been received by the department on or before June 30th in the school year for which special educational services are sought” (8 NYCRR 200.8 [b], as amd), the County Attorney opposes the petition herein.
The county contends that section 236 of the Family Court Act authorizes Family Court orders for prospective expenses only, since the court order must be based upon a *405 judicial determination, prior to or at least contemporaneously with placement, that the child is handicapped and requires special educational services.
Subdivision 2 of section 236 of the Family Court Act provides as follows: “Whenever such a child within the jurisdiction of the court pursuant to this section appears to the court to be in need of special educational services, including transportation, tuition or maintenance, a suitable order may be made for the education of such child in its home, a hospital, or other suitable institution, and the expenses thereof when approved by the court and duly audited, shall be a charge upon the county or the city of New York thereof wherein the child is domiciled at the time application is made to the court for such order.” (Emphasis added.)
Petitioner through counsel for Clover Patch School contends that the Family Court’s function is purely ministerial — to determine whether the child is handicapped and whether the special educational services are reasonable, necessary and appropriate. This contention is clearly belied by the language of section 236 of the Family Court Act (and former § 232) that “a suitable order may be made” (emphasis added). (See Matter of Lape, 108 Misc 2d 271.). Furthermore, when a child has already received the benefit of special educational services actually furnished between April 1 and June 26, 1982, such child cannot logically on August 20, 1982 — when the petition herein (dated July 30) was filed — “appear to the court to be in need of [such] special educational, services” already furnished. (Emphasis added.)
Whether by custom, authority, or provincialism, courts and Judges generally are not accustomed to “rubber , stamping” previously made determinations or decisions over which they allegedly have no real authority or control. The judicial discretion inherent in the statutory language of section 236 of the Family Court Act certainly does not imply that any such ministerial or “rubber stamping” function was intended by the Legislature.
What should and must be required in any orderly judicial process is that petitions for special educational ser *406 vices be completed and filed for approval before any special educational services are in fact rendered.
The Clover Patch School correctly points out that the regulation of the Commissioner of Education at 8 NYCRR 200.8 (b) was recently amended to require that notification be received by June 30 — rather than April 15. The new regulation became effective on July 1, 1982; therefore, the old regulation requiring that notification be received by April 15, 1982, should properly apply to this case.
The Clover Patch School in its affidavit and memorandum states that it would be an “absurd requirement that notification be received prior to April 15th for any services rendered during the entire school year, even services rendered thereafter.” (Emphasis added.)
In such assertion lies the very crux of the problem. In this Judge’s experience, the schools rendering special educational services determine themselves that a certain child is handicapped and that their special educational program is appropriate, and then proceed to actually enroll the child and furnish such special educational services — leaving the “formality” of the paperwork and Family Court approval for a later day.
To sanction such untimely and lax procedure in the face of the language of section 236 of the Family Court Act, the judicial function and procedure, and the regulation of the Commissioner of Education (8 NYCRR 200.8 [b]) (who just relaxed his requirement by 75 days), would in essence be to leave both the Family Courts and the taxpayers at the beck and call of special educational school administrators and personnel. The Legislature clearly intended no such result in enacting the applicable statutes. (Family Ct Act, § 236; Education Law, §§ 4406, 4407.)
This Family Court by written notice dated April 22, 1980, notified Clover Patch School, and all other schools furnishing special educational services to handicapped children, that petitions requesting special educational services should be filed with the Family Court of Schoharie County “well before” the requested tuition and transportation costs are expected to begin.
To require that petitions be prepared and filed before special educational services are furnished is far from being *407 an “absurd requirement.” The shallowness of Clover Patch’s position is aptly demonstrated by their own affidavit and memorandum which states that Joshua B. in approximately July, 1981 (at age two or three months) was identified as severely handicapped as defined in subdivision 1 of section 4401 of the Education Law and therefore entitled to special educational services. Furthermore, the petition herein is dated July 30,1982 — three and one-half months after the April 15 deadline for State reimbursement — yet, the signatures of a physician (July 30, 1982), psychologist (Aug. 4, 1982), and superintendent of schools (Aug. 16, 1982) were then expeditiously obtained and the petition actually filed in this court by August 20. Interestingly, the petition for special educational services for Joshua for the summer of 1982 (July 7 to Aug. 13) at Clover Patch School was dated May 13, 1982, and filed in Family Court by July 14, 1982 (and approved without objection).
There is no reason whatsoever that the 21-day process to complete and file the appropriate petition herein could not have been accomplished sometime between July, 1981 and April 1, 1982 — Joshua’s first day at Clover Patch School.
The Commissioner of Education has already notified the county and the Family Court that State aid for the educational services rendered herein cannot be approved based upon section 200.8 of the Regulations of the Commissioner of Education.
In effect, the Family Court by “rubber stamping” this untimely filed petition would be placing the entire burden of these special educational services upon the taxpayers of the County of Schoharie. Thus, the county has shown prejudice if petitioner is allowed to proceed — unlike the City of New York in Matter of Charles M. (100 Misc 2d 803, 805).
Upon the authority of Matter of L. v New York State Dept. of Educ. (39 NY2d 434) and upon the same reasoning set forth in Matter of Lape (supra), this court determines that the petition herein should be dismissed as untimely made. It should be noted that in Matter of L. v New York State Dept. of Educ., the financial consequence of dismissing the petition fell upon the parent who had already paid *408 tuition, whereas, in this case, the ultimate financial consequence will be visited upon the Clover Patch School — which rendered special educational services without any prior Family Court approval, or even a petition for Family Court approval until after the special educational services had already been furnished.
The result in this casé does not deprive this handicappéd child of free special educational services — which he has already received and no one can take away from him. That the school seeking payment of tuition expenses for a handicapped child enrolled without judicial approval is denied payment due to an untimely made application is not an Unjust result.
It appears that the Commissioner of Education has determined to enforce his amended regulations, and this court likewise determines that the orderly process of budgeting and payment requires that petitions be filed in a timely manner before special educational services are rendered. Any other result invites budgetary chaos. (Matter of L. v New York State Dept. of Educ., supra, at p 441.) The requirement for a timely petition is hardly too much to ask for the imposition of a substantial* financial obligation upon the taxpayers of any county, for which the county is entitled to 50% State reimbursement, only if proper notification and claim are timely received by the State Education Department. (See 8 NYCRR 200.8 [b], [d].)
The petition herein is dismissed as untimely.

 The already approved cost to the county and State for Joshua to attend Clover Patch School from September 9,1982 to June 24,1983 is $8,966 tuition, plus transportation expenses.